UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DANIEL JOSE GOMEZ, WE THE PEOPLE; | 4:24-CV-04216-LLP |
| Plaintiff, | |
| vs. | ORDER GRANTING MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND DISMISSING COMPLAINT |
| ELK POINT UNION COUNTY, STEVEN JENSEN, STATE OF SOUTH DAKOTA, DEPUTY PALMER, MELISSA LARSEN, JERRY MILLER, MICHAEL J. MCGILL, ROBERTO A. LANGE, NICHOLAS DAVIS, CHAD STROMAN, CITY OF SIOUX CITY, STATE OF IOWA, CITY OF SIOUX FALLS, | |
| Defendants. | |

Plaintiff, Daniel Jose Gomez (Gomez), has filed a 117-page pro se complaint alleging that Defendants violated his rights under 42 U.S.C. § 1983.[1]  (Doc. 1.)  Gomez has not paid a filing fee for this case, but he has filed a motion for leave to proceed in forma pauperis ("IFP") (Doc. 2).  Gomez also requests appointment of counsel, doc. 4, and approval to file electronically, doc. 8.

**I.    BACKGROUND**

Gomez's complaint asserts claims stemming from two arrests.  The first arrest occurred in Sioux City, Iowa on July 7, 2006.  The second arrest took place in North Sioux City, South Dakota on June 7, 2008.  The arrests, described below, appear to be unrelated.

---

[1] Gomez also cites to 18 U.S.C. §§ 241 and 242 in his complaint.  (Doc. 1, p. 1.)  However, 18 U.S.C. §§ 241 and 242 are criminal statutes that provide no basis for a private right of action. *See United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts have repeatedly held that there is no private right of action under § 241, even though the statute allows federal authorities to pursue criminal charges"); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242 . . . These statutes do not give rise to a civil action for damages.").  Therefore, to the extent that Gomez asserts claims under 18 U.S.C. §§ 241 and 242, such claims are dismissed.

1

## A. Arrest on July 7, 2006

Gomez summarized the facts surrounding his 2006 arrest in a records request he sent to the Sioux City Police Department in October of 2024. Gomez attached a copy of his records request, and the response, to his complaint in this case:

> On July 7th 2008 officer Chad stroman (strohman) of the Sioux City police department was investigating a shootout between one Sydney Hoffman and other unknown individuals . I Daniel Gomez was a passenger in a green Cadillac passing thru the 1600 and ingleside area heading towards pierce st when officer strongman and other officers pulled the green Cadillac and the occupants over without any reasonable suspicion or probable cause to suspect that we were the parties involved in the alleged shootout with Sydney Hoffman, officers proceeded to pull the driver out and beat him to the ground while pointing several firearms at my chest and telling me that I was next, officers pulled me out of the passenger seat and placed me in the back of a police car and dispatched Sydney Hoffman (the involved party to the shooting) and asked her if I was the subject to which she replied that I was not the subject. I had nothing to do with nor did I know who Sydney Hoffman was. Chad proceeded to kidnap me under color of law in violation of title 18 usc 241-242 deprivation of rights under color of law effecting an unreasonable search seizure and arrest in violation of the fourth amendment I am requesting the full police reports of the incident involving Sydney Hoffman and the shooting the vehicle dash camera footage and the body camera footage or videos and the status of who was convicted for the alleged shooting involving Sydney Hoffman this kidnapping under color of law was unwarranted and constitutes a kidnapping under color of law I want the names of all officers involved and all incident reports in relation I want all officers involved suspended with out pay pending further investigation I have submitted a tip to crime stoppers and will be proceeding with a federal and or state claims against the city and the department for a failure to train failure to supervise and a failure to discipline

(Doc. 1-2, p. 8.)

Sioux City Police Chief, Rex Mueller, responded to Gomez's records request on October 16, 2024, stating:

> On 7/7/2006 officers were dispatched to a large gang disturbance at 903 16th Street. Officers approached a vehicle behind 910 16th street after the vehicle was observed it turning into the alley and did not use a turn signal. Officers made lawful contact with you, and you failed to follow various orders given to you. At the conclusion of the police contact both you and the driver were arrested. You were charged with "Failure to Obey a Police Officer" and "Carrying a Weapon." During that interaction you also falsified your identity due to your status of being out on bond from South Dakota. Following courtroom proceedings on this incident you pled guilty for "Tampering with Records" and violation of your probationary status. The other charges from the events of July 7th, 2006, were dismissed.
>
> Based on our analysis of the incident, we found no evidence that you were "kidnapped." Officers were lawfully dispatched to a call for service and contacted you and the other occupants of the vehicle. "Reasonable articulable suspicion" allowed them to "detain" you while they investigated the disturbance. During the investigation officers

2

observed you and the driver commit criminal offenses that provided "probable cause" which allowed them to make a 4th Amendment "seizure" of your person by placing you under arrest. Because their seizure of your person was for criminal offenses, this incident does not meet the definition of kidnapping. In the state of Iowa, certified peace officers may make a lawful seizure of an individual for violations of law or local ordinances. Our investigation also revealed no indication of any coordination between our officers and law enforcement or judicial representatives from South Dakota.

(Doc. 1-2, p. 10.)

### B. Arrest on June 7, 2008, and subsequent conviction on September 23, 2008

Gomez was arrested in North Sioux City, South Dakota on June 7, 2008. On September 23, 2008, Gomez was convicted of escape in the First Judicial Circuit Court in Union County, South Dakota. It is difficult to glean all of the facts from Gomez's complaint in this case, but Gomez summed up the circumstances of his arrest and conviction in a prior § 1983 complaint and supplement filed in this Court on September 21, 2009.[2] *See* Civ. 09- 4142, *Gomez v. Nicholas A. Davis, Melissa Larson, Deputy Palmer, and Jerry Miller* (Docs. 1, 14).

Gomez pulled into a gas station in North Sioux City, South Dakota at 1:40 a.m. on June 7, 2008. Deputy Palmer, an officer with the North Sioux City Police Department, "ran his name," and discovered an outstanding arrest warrant for passing checks with insufficient funds. Gomez alleged that the outstanding warrant was a "daytime only" warrant pursuant to South Dakota law, but Deputy Palmer contacted Melissa Larsen (Union County Clerk of Court), and Larsen verbally changed the terms of the warrant to an "anytime warrant." Nicholas Davis, another officer with the North Sioux City Police Department, then arrested Gomez and transported him to the Elk Point Jail. After Gomez was bonded out of jail, he violated the terms of his bond and was arrested for failure to appear, resulting in an additional charge for escape. As a result of plea negotiations, most of the charges were dismissed and Gomez was sentenced to 180 days' imprisonment on the escape charge only.

Gomez claimed that the officers had no probable cause to investigate him, and he asserted that his arrest was unconstitutional because the warrant for his arrest was a "daytime only" warrant

---

[2] The Court takes judicial notice of the pleadings and records filed in Civ. 09-4142. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"); *MacMillan Bloedel, Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) (recognizing that courts may take judicial notice of records of related proceedings before the same court).

and he could not be arrested at night. (Civ. 09-4142, Doc. 1, p. 3.) On December 22, 2009, this Court dismissed Gomez's § 1983 lawsuit on screening, without prejudice, for failure to state a claim. (*Id.*, Doc. 32.)

### C. The Instant § 1983 Action

Gomez filed the instant complaint on November 20, 2024. (Doc. 1.) In addition to allegations against the named defendants, Gomez details allegations against governmental units, agencies, and individuals in what appears to be an amalgamation of prior lawsuits Gomez has filed in this Court over the years.[3] The Court will consider only the claims against the defendants named by Gomez in this lawsuit, to the extent that the Court has been able to identify those claims.

### 1. Parties

Plaintiff Daniel Gomez is an individual who has been arrested several times, but he is not incarcerated at this time.

The governmental-entity defendants in this case include the following cities, county and states: Sioux City, Iowa; Elk Point, South Dakota; Sioux Falls, South Dakota; Union County, South Dakota;[4] the state of Iowa; and the state of South Dakota. Individually-named defendants are: Chad Stroman, police officer in Sioux City, Iowa; Deputy Palmer and Nicholas Davis, police officers in North Sioux City, South Dakota; Melissa Larsen, Union County Clerk of Court; Jerry Miller, Union County State's Attorney; Michael McGill, private lawyer appointed to represent Gomez in Union County proceedings; Steven Jensen,[5] First Judicial Circuit Court Judge in Union County who sentenced Gomez for escape on September 3, 2008; and Roberto A. Lange, Chief Judge of the United States District Court, District of South Dakota.

### 2. Gomez's Claims

Concerning his arrest in Sioux City, Iowa on July 7, 2006, Gomez alleges that officer Chad Stroman violated the Fourth Amendment by arresting Gomez without a valid warrant. (Doc. 1-1,

---

[3] Gomez's prior cases include four § 1983 actions, one habeas petition filed pursuant to 28 U.S.C. § 2241, and two habeas petitions filed under 28 U.S.C. § 2254.

[4] Gomez lists "Elk Point Union County" as one defendant, but the Court assumes Gomez is referring to Union County, South Dakota and separately to its county seat, the City of Elk Point, South Dakota.

[5] He is now the Chief Justice of the Supreme Court of South Dakota.

p. 20.) Citing *Monell*,[6] Gomez contends the state of Iowa and the city of Sioux City, Iowa are liable for failing to train, supervise and discipline officer Stroman. (*Id.*, p. 43.)

Regarding his arrest in North Sioux City, South Dakota on June 7, 2008, Gomez alleges officers Palmer and Davis, along with "elk point Union county employee Melissa Larsen," conspired to violate his constitutional rights by falsifying the "daytime-only" arrest warrant and "kidnapping" him. (Doc. 1-1, pp. 4, 21.)

Gomez also claims that, after his arrest on June 7, 2008, his court-appointed lawyer, Michael McGill, the State's Attorney, Jerry Miller, and the State Circuit Court Judge, Steven Jensen, conspired to persuade Gomez to plead guilty to the escape charge. Gomez refers to the 2008 criminal proceedings as malicious prosecution (Doc. 1-1, pp. 12, 15-16, 96), and it appears he is alleging these defendants violated his Sixth Amendment right to a jury trial. (Doc. 1, p. 3.)

On page 15 of his complaint, Gomez refers to a "[p]attern practice of unconstitutional and unlawful conduct" by counties, cities, and the state of South Dakota. (Doc. 1-1, p. 15.) Thus, it appears Gomez is suing Elk Point, Sioux Falls, Union County, and the state of South Dakota under *Monell* for alleged wrongdoings of its officials involved in Gomez's 2008 arrest in South Dakota and his subsequent conviction for escape.

Finally, Judge Roberto Lange is named as a defendant in this case. Because Judge Lange is a federal judge, the Court will liberally construe this as a *Bivens* claim.[7] On page 3 of his complaint, Gomez writes, "Roberto A. Lange deprives 7th Amendment." (Doc. 1, p. 3.) The only factual allegation regarding Judge Lange is found on page 85 of Gomez's complaint:

> Roberto a Lange dismissed the complaint against court appointed lawyers: m Simmons, m kadi, T hirschberger, on the basis that they were not persons acting under color of any statute law. (Appendix._D) The courts erred in its assessment that defense counsel are not persons acting under color of law for purposes of section 1983 civil complaints, defense lawyers do in fact act under color of a law specifically South Dakota codified laws

(Doc. 1-1, p. 85.) The Court assumes Gomez is referring to Judge Lange's ruling in a prior § 1983 action filed by Gomez on October 20, 2020. *See* Civ. 20-4151, *Gomez v. State of South Dakota, Minnehaha County States Attorney Office, Melissa Sommors, Mark Kadi, and Tim Herschberger.*

---

[6] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[7] In *Bivens*, the United States Supreme Court authorized a cause of action against federal officials for damages based on a deprivation of constitutional rights. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 391–92 (1971).

Three of the defendants in that case were lawyers employed by the Minnehaha County public defender or advocate's office who represented Gomez in the state court proceedings following his indictment by a Minnehaha County Grand Jury on April 18, 2019. (*Id.*, Doc. 8, pp. 8-9.) In that earlier § 1983 action, Gomez claimed that his lawyers violated his constitutional rights. (*Id.*) On December 3, 2020, Judge Lange dismissed the public defenders from the lawsuit at screening for failure to state a claim.[8] (*Id.*) Gomez now claims that Judge Lange's decision was erroneous.

Gomez states that all defendants are sued in their individual and official capacities. (Doc. 1-1, p. 2.) Under § 1983, a defendant may be sued in his or her individual capacity or his or her official capacity. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (citation omitted). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165–66 (citing *Monell,* 436 U.S. at 690 n.55). Municipalities and other local government units, like Union County, can be liable under § 1983 only where a policy or custom of that entity caused the alleged constitutional violation. *Monell,* 436 U.S. at 690–92.

Gomez requests $80 million in damages. He also seeks injunctive relief in the form of exoneration of his convictions and expungement of his criminal record, criminal prosecution of defendants, and disbarment of the lawyer-defendants. (Doc. 1, p. 3.)

## II. DISCUSSION

### A. IFP Application

A court may authorize the commencement of a suit without prepayment of fees when an applicant files an affidavit stating he is unable to pay the costs of the lawsuit. *See* 28 U.S.C. § 1915(a). Having evaluated Gomez's financial affidavit, the Court finds that he has satisfied the economic eligibility requirement of 28 U.S.C. § 1915(a) and grants the IFP application, Doc. 2.

### B. 1915 Screening Standard

Under 28 U.S.C. § 1915A, the court must screen complaints if the plaintiff is proceeding IFP. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious

---

[8] Later, Judge Lange granted summary judgment in favor of the remaining defendants. (Civ. 20-4151, Docs. 66, 67.) Gomez appealed and the Eighth Circuit affirmed Judge Lange's decision. (*Id.*, Doc. 86.)

claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this liberal construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory") (citing *Twombly*, 550 U.S. at 553–63).

**C. Analysis**

Under 42 U.S.C. § 1983, a plaintiff may seek a civil remedy against any "person who, under color of any [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, Gomez must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

7

### 1. All Claims Are Barred by Statute of Limitations

While the statute of limitations is an affirmative defense, a district court may dismiss an IFP complaint as frivolous under 28 U.S.C. § 1915 when it is apparent the statute of limitations has expired. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992) (per curiam).

Because 42 U.S.C. § 1983 does not contain a specific statute of limitations, the United States Supreme Court has instructed courts to apply the analogous state statute of limitations. *Bell v. Fowler*, 99 F.3d 262, 265–66 (8th Cir. 1996) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–68 (1985)). Under South Dakota law, "[f]ederal civil rights actions must be brought within three years after the alleged constitutional deprivation occurred." *Sisney v. Best Inc.*, 754 N.W.2d 804, 809 (S.D. 2008) (citing SDCL 15-2-15.2). Gomez filed this lawsuit on November 20, 2024, but the violations alleged by Gomez occurred in 2006 (Iowa defendants), 2008 (South Dakota defendants), and 2020 (Judge Lange).[9] Accordingly, the Court must dismiss all of Gomez's claims as frivolous because they are barred by the statute of limitations. *See, e.g., Bryant v. Sioux Falls Police Dep't*, 2023 WL 5017016 (D.S.D. Aug. 7, 2023) (dismissing with prejudice § 1983 claims barred by three-year statute of limitations), *aff'd* 2023 WL 10353035 (8th Cir. Oct. 27, 2023).

Even if Gomez's claims had been timely filed, the Court would be required to dismiss the claims on other grounds, as discussed below.

### 2. Claims for Money Damages Against South Dakota and Iowa are Barred by Sovereign Immunity

The Supreme Court of the United States has explained that Congress, in passing 42 U.S.C. § 1983, did not abrogate states' Eleventh Amendment immunity from suit in federal court. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 65 (1989) (citations omitted). The Eleventh Amendment bars suits against states for monetary damages. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Dakota, Minnesota & Eastern R.R. Corp. v. South Dakota*, 362 F.3d 512, 516 (8th Cir. 2004). Gomez's claims for money damages against the state of South Dakota and the state of Iowa are barred by the Eleventh Amendment and dismissed under 28 U.S.C. § 1915(e)(2)(B).

---

[9] The same statute of limitations applies to *Bivens* and § 1983 claims. *See Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995).

### 3. Official Capacity and Individual Capacity Claims for Money Damages Against Judge Jensen Are Barred by Sovereign Immunity and Judicial Immunity

The Eleventh Amendment prohibits § 1983 suits seeking monetary damages from a state official in his or her official capacity because a suit against a state official in his official capacity is really a suit against the state. *See Treleven v. Univ. of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996). Defendant Steven Jensen is an employee of the state of South Dakota. Thus, Gomez's claims for money damages against defendant Steven Jensen in his official capacity are barred by the doctrine of sovereign immunity.

The Eleventh Amendment does not bar claims for damages against state officials sued in their individual capacities—as such claims do not seek to impose liability on the state agency that employs those individuals—and thus the Court can exercise subject-matter jurisdiction over the individual-capacity claims for money damages against Judge Jensen. *See Nix v. Norman*, 879 F.2d 429, 433 n.3 (8th Cir. 1989) (claims seeking damages from state officials in their individual capacities are not barred by Eleventh Amendment). However, Gomez's individual capacity claims against Judge Jensen are barred by judicial immunity.

Judicial immunity means a "judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). The two circumstances where judicial immunity does not apply are when the alleged actions are "not taken in the judge's judicial capacity" or were "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity," *Schottel*, 687 F.3d at 373 (citing *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982)), and immunity applies even if the "action [the judge] took was in error . . . or was in excess of his authority," *Mireles*, 502 U.S. at 13 (citation omitted).

Taking all the allegations in Gomez's complaint as true, Judge Jensen did nothing but preside over Gomez's state criminal case. There is no question that Judge Jensen had jurisdiction over the case. Judge Jensen's acceptance of Gomez's guilty plea to the escape charge is a judicial function normally performed by a judge, and thus Judge Jensen is entitled to judicial immunity. Gomez's allegations that Judge Jensen conspired with the prosecutor and Gomez's lawyer to persuade Gomez to plead guilty to escape does not change this result. *See Dennis v. Sparks*, 449

U.S. 24, 27 (1980) (affirming dismissal of judge as immune from liability under § 1983 despite allegations the judicial act resulted from a conspiracy with other defendants); *Moses v. Parwatikar,* 813 F.2d 891, 893 (8th Cir. 1987) ("Clearly a judge who conspires to violate a person's constitutional rights acts maliciously or corruptly. However, the need to preserve the judge's independence requires a grant of absolute immunity."). *See also John v. Barron,* 897 F.2d 1387, 1392 (7th Cir. 1990) ("[J]udges, on mere allegations of conspiracy, could be hauled into court and made to defend their judicial acts, the precise result that judicial immunity was designed to avoid."); *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994) ("Indeed, *Sparks* reaffirmed that judges enjoy absolute immunity from liability under § 1983–even when the judge allegedly conspires with private parties."). Gomez's individual capacity claims for money damages against Judge Jensen are dismissed based on judicial immunity.

### 4. Official Capacity and Individual Capacity Claims for Money Damages Against Judge Lange Are Barred by Sovereign Immunity and Judicial Immunity

An official capacity suit against a federal governmental official is the functional equivalent to a suit against the United States. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). The doctrine of sovereign immunity bars federal courts from hearing suits against the federal government, and against its officers and employees in their official capacities, for monetary damages, except where sovereign immunity has been waived. *United States v. Mitchell,* 445 U.S. 535, 538 (1980). When claims are brought against a federal employee in his official capacity, the real party in interest is the United States, and sovereign immunity bars the official-capacity claims. *Buford v. Runyan,* 160 F.3d 1199, 1203 (8th Cir. 1998). Thus, Gomez's claims for money damages against Judge Lange in his official capacity are barred by sovereign immunity.

The actions Gomez alleges were taken by Judge Lange -- presiding over a § 1983 lawsuit filed by Gomez and making rulings on the law, whether the rulings are correct or not – are judicial acts "normally performed by a judge" in his judicial capacity. *Schottel,* 687 F.3d at 373 (citation omitted). Thus, Judge Lange is entitled to absolute judicial immunity for Gomez's individual capacity claims for money damages.

### 5. Individual Capacity Claims for Money Damages Against Union County State's Attorney, Jerry Miller, are Barred by Prosecutorial Immunity

Absolute immunity protects prosecutors against § 1983 claims arising from initiating and presenting a criminal case. *See Imbler v. Pachtman,* 424 U.S. 409, 430–31 (1976) (holding that

prosecutors are absolutely immune from civil rights claims based on actions taken while initiating and pursuing a criminal prosecution); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process"). State's Attorney Jerry Miller is entitled to immunity because negotiating Gomez's plea deal was clearly associated with the pursuit of a criminal prosecution. Gomez's conspiracy allegations do not negate prosecutor Miller's immunity from suit. *See Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) (prosecutor is immune from conspiracy charge when the alleged participation consists of otherwise immune acts). Gomez's individual-capacity claims against defendant Miller for money damages are dismissed based on his prosecutorial immunity.

### 6. Gomez Fails to State a *Monell* Claim Against City of Sioux Falls, City of Sioux City, City of Elk Point, and Union County

The claims against the cities and county must be dismissed since there are no allegations which would support a claim under *Monell*. In *Monell*, the United States Supreme Court held that a civil rights complaint against a municipality or its agent must allege (1) the existence of a custom or policy of the municipality which is of such longstanding as to have the force of law; and (2) that one of the municipality's employees violated the plaintiff's civil rights while acting pursuant to this custom or policy. 436 U.S. at 691–695. The Eighth Circuit has stated that, under *Monell*, "[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016). Generally, an isolated incident of police misconduct cannot establish a municipal policy or custom creating liability under § 1983. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

The complaint does not contain facts that plausibly demonstrate the existence of any municipal or county policy that caused the perceived wrongs of which Gomez complains. Gomez's use of the phrases "pattern practice of unconstitutional and unlawful conduct" and "unconstitutional practices, customs and policies" does not help. *See Iqbal*, 556 U.S. at 678 (formulaic recitation of the elements of a cause of action does not suffice to state a claim). As such, the complaint fails to state a cognizable § 1983 claim against the county and municipalities.

11

*See, e.g., Munz v. Parr*, 758 F.2d 1254, 1259 (8th Cir. 1985) (affirming district court dismissal on 1915 screening of city and county defendants when pro se civil rights plaintiff failed to state a *Monell* claim against city or county by doing "little more than merely parrot the language of *Monell*") (internal quotation omitted). Accordingly, Gomez's claims against Sioux Falls, Sioux City, Elk Point, and Union County are dismissed for failure to state a claim.

This same reasoning applies to Gomez's official capacity claims against the defendants who are employees of the cities and county. Gomez's official capacity claims against those defendants really are claims against Sioux City, Sioux Falls and Union County. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Thus, Gomez's official capacity claims for money damages against Melissa Larsen (Union County Clerk of Court), Jerry Miller (Union County State's Attorney), and officers Stroman, Palmer and Davis are dismissed because Gomez has failed to state a claim that a constitutional violation arose from a municipal or county policy or custom.

### 7.  Gomez Fails to State a Claim Against Attorney Michael McGill

Gomez's claims against his lawyer, Michael McGill, are subject to dismissal because private lawyers, whether appointed or retained, generally do not qualify as state actors. *See Myers v. Vogal*, 960 F.2d at 750; *see also Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (public defender does not act under color of state law when performing traditional functions as counsel). Although a valid conspiracy charge could support an allegation that a private attorney acted under color of state law, Gomez's vague allegations do not provide plausible grounds to infer that there was a meeting of the minds between McGill and the state actors to violate Gomez's constitutional rights. *See Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993) ("[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor."). Accordingly, Gomez's § 1983 claims against attorney McGill are dismissed for failure to state a claim.

### 8.  The Injunctive Relief Gomez Requests is Not Available under § 1983

Gomez seeks expungement of his criminal record and exoneration of his conviction. However, federal district courts possess no jurisdiction under 42 U.S.C. § 1983 to modify a final order of a state court. *See Callahan v. Rendlen*, 806 F.2d 795, 796 (8th Cir. 1986). Habeas corpus is the sole federal remedy for attacking the validity of a conviction or confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Gomez already has filed two federal habeas petitions under

28 U.S.C. § 2254 challenging his 2008 conviction. *See* Civ. 21-4058, *Gomez v. Dooley*; Civ. 21-4177, *Gomez v. Mattson, Miller, Union County States Attorneys Office, Attorney General for the State of South Dakota*.[10]

Gomez also seeks criminal prosecution of the defendants. Federal courts do not have authority to institute criminal proceedings. The authority to initiate criminal charges lies only with state and federal prosecutors. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Cragoe v. Maxwell*, 2012 WL 462960, at *2 (D.S.D. Feb. 13, 2012) ("If [the pro se plaintiff] believes criminal charges are appropriate for whatever reason, this Court is not the proper entity to initiate those proceedings."). Furthermore, Gomez lacks standing to compel a criminal prosecution. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

Finally, Gomez asks that the lawyer defendants be disbarred and not allowed to practice law. This is another request that the Court simply has no power to grant. Federal courts rely on state courts and state bar associations to admit and discipline lawyers.

For these reasons, Gomez's claims for injunctive relief are dismissed.

### 9. Gomez Fails to State a Malicious Prosecution Claim

Throughout his complaint, Gomez describes his prosecution in 2008 as malicious. However, Gomez does not provide enough facts to state a Fourth Amendment claim under § 1983 for malicious prosecution. Furthermore, the Supreme Court of the United States held that a Fourth Amendment malicious prosecution claim under § 1983 requires the plaintiff to show that the criminal prosecution ended without a conviction. *See Thompson v. Clark*, 596 U.S. 36, 39 (2022). Gomez admits that his criminal prosecution ended with a conviction for escape. Thus, Gomez has failed to state a claim for malicious prosecution.

---

[10] Judge Lange dismissed the first habeas action for lack of subject-matter jurisdiction because Gomez's sentence had been discharged and he was no longer in custody. (Civ. 21-4058, Doc. 14.) Judge Lange dismissed the second habeas petition for lack of jurisdiction because it was a successive petition filed without the Eighth Circuit's permission. (Civ. 21-4177, Doc. 7.)

**10. State Law Claims**

To the extent that Gomez is asserting state law claims against any of the defendants, the Court declines to exercise supplemental jurisdiction. *See Gibson v. Weber,* 431 F.3d 339, 342 (8th Cir. 2005) (Congress has unambiguously granted district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed).

**III.    CONCLUSION**

Gomez's claims under 42 U.S.C. § 1983 are barred by the statute of limitations. The Court will not grant Gomez leave to amend because amendment would be futile. Accordingly,

**IT IS ORDERED**:

1. Gomez's motion to proceed IFP is granted. (Doc. 2.)

2. Gomez's motion for appointment of counsel is denied. (Doc. 4.)

3. Gomez's request to file electronically is denied. (Doc. 8.)

4. Gomez's § 1983 claims are barred by the statute of limitations, and the complaint is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

DATED this 11th day of March, 2025.

BY THE COURT:

LAWRENCE L. PIERSOL
United States District Judge

14